## STOW *vs.* BOZEMAN'S EXECUTORS.

29 397
112 631

[BILL IN EQUITY BY VENDEE FOR ABATEMENT OF PURCHASE MONEY ON ACCOUNT OF DEFICIENCY IN QUANTITY OF LAND.]

1. *Mode of computing damages on account of deficiency of land.*—Where two contiguous half-sections, which are rendered fractional sub-divisions by the passage of a navigable river, are represented by the vendor to contain 640 acres, and the vendee afterwards files a bill for an abatement of the purchase money, it is erroneous to compute the damages resulting from the deficiency

by taking into consideration the quality of the lands adjacent; but the correct rule is to compute the average value of the land per acre at the price agreed to be paid, after first deducting the value of the ferry and river privileges, and to multiply this average value by the number of acres deficient.

2. *When misrepresentations do not amount to fraud.*—The honest expression of opinion by the vendor as to the location of one of the boundary lines, even though erroneous, is not such a misrepresentation as constitutes a fraud on the purchaser, and is not available to him in abatement of the purchase money.

3. *Extent of relief in equity.*—The jurisdiction of equity having once attached, on bill filed by the vendee for an abatement of the purchase money on account of the vendor's misrepresentations as to the quantity of land, it is the duty of the court to go on and do complete justice between the parties, without remitting them to a court of law for an adjustment of the credits for partial payments and other matters of account.

4. *Computation of interest.*—In making an abatement of the purchase money, it is a proper method of computing interest, to divide the amount of the damages by the number of notes originally given for the purchase money, and to allow interest on each sum from the time the notes respectively fell due to the time when new outstanding notes were substituted.

APPEAL from the Chancery Court of Tallapoosa. Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Joel Stow, the appellant, against the executors of Nathan Bozeman, deceased ; the material allegations being as follows : That complainant, in 1837, purchased a tract of land from said Bozeman, at the price of $4,500, and executed to him four notes for the purchase money, payable on the first of March respectively in the years 1838, 1839, 1840, and 1841 ; that the land consisted of two contiguous half-sections, through which the Tallapoosa river ran, and which were represented by Bozeman to contain together 640 acres, when in fact they were fractional sub-divisions, and did not contain more than 540 acres ; that Bozeman, on pointing out the boundaries of the land, represented a fertile tract, one hundred yards in width and extending the whole length of the two half-sections, as included within the boundaries, when in fact it was not so included ; that complainant, on discovering the deficiency in the quantity of the land, insisted on an abatement of the purchase money, and Bozeman promised that the matter should be satisfactorily adjusted on the final settlement

between them; that partial payments were, from time to time, made on the notes, but no receipts were taken for these payments ; that in 1843 complainant took up the original notes given for the purchase money, and executed three new notes for the amount ascertained to be due by Bozeman's calculation, but in this computation several errors intervened to the injury of complainant ; that Bozeman afterwards died, and his executors have instituted suit on these new notes. The bill prays an injunction of the action at law, an abatement of the purchase money, a settlement of the accounts, and general relief.

The defendants answered the bill, denying its material allegations ; but, as no point is here made on the answer, it is unnecessary to notice its allegations.

On final hearing, on bill, answer, and proof, the chancellor held, that the complainant was entitled to an abatement of the purchase money on account of the deficiency in the quantity of land ; that in computing the injury which he had thereby sustained, it was proper to take into consideration the value of the adjacent lands on the east and west boundaries of the tract, after deducting from the price agreed to be paid the full value of the river and ferry privileges ; that Bozeman's misrepresentation of one of the boundary lines was but the expression of an opinion in which he was honestly mistaken, and did not constitute a fraud on the purchaser; and that the complainant could obtain full redress at law, in defense of an action on the notes, for all partial payments. He therefore rendered a decree in accordance with these views, and ordered a reference to the register ; and directed him, after ascertaining the amount which was to be deducted from the purchase money, to divide that sum into four parts, and to calculate interest on each part, from the time the original notes respectively fell due, to the time when the new notes were given.

From this decree the complainant appeals, and here assigns the following errors : 1. The chancellor erred in not allowing the complainant the average value of the land, and in deciding that the adjacent lands should be estimated in ascertaining the damages. 2. The chancellor erred in not allowing compensation for the misrepresentation made by Bozeman as to

one of the boundary lines. 3. The chancellor erred in not allowing the credits on the notes to which complainant was entitled. 4. The chancellor erred in not directing the register to take and state an account of all the matters in controversy.

J. T. LEFTWICH and J. E. BELSER, for the appellant, made the following points :—1. The proper mode of ascertaining the compensation to which the complainant was entitled, was, to compute the average value of the tract, without reference to the adjacent lands.—Blessing v. Beatty, 1 Robinson's Va. Rep. 287.

2. Bozeman's misrepresentations as to one of the boundary lines, constituted a fraud on complainant, against which he should have relief.—Munroe v. Pritchett, 16 Ala. 785 ; 7 English, 699 ; 8 Ired. Eq. 304; 14 Ala. 209.

3. It is a principle of equity jurisprudence, that when jurisdiction has once attached, the court will grant complete relief, and not mete out justice by halves.—Cathcart v. Robinson, 5 Peters, 263 ; Beardsley v. Hall, 1 Root, 363 ; McRaven v. Forbes, 6 How. Miss. 569 ; Miami Ex. Co. v. U. S. Bank, Wright, 249 ; Oliver v. Pray, 4 Hamm. 175 ; Hawley v. Sheldon, Harr. Ch. 420.

J. FALKNER, contra, contended that the bill should have been dismissed, because the complainant had a plain and adequate remedy at law ; and that this court should render the decree which the chancellor ought to have rendered.

WALKER, J.—The court below erred, in our opinion, in the rule which it adopted for the ascertainment of the injury sustained by appellant in consequence of the deficiency in the quantity of the land sold to him. The lands sold consisted of the west half of the fractional section four, and the east half of fractional section five ; and the north and south line, dividing the two contiguous half-sections, is the western boundary line of the former, and the eastern boundary line of the latter. The half-sections were represented to have together an area of 640 acres, while in truth they are fractional sub-divisions; and they are such because the Tallapoosa river passes through a portion of each of the half-sections, the land

covered by which is not computed in the government survey. The chancellor who rendered the decree in this case, directed the register, in computing the damages resulting from the deficiency in the quantity, to take into consideration the quality of the lands on the eastern and western boundaries of the two half-sections, and the fact that the complainant had obtained the river and ferry privileges.

When land of stipulated area is purchased, it cannot be inferred that the value or quality of the land, contiguous to it on either side, was an element influencing the contract. The purchase is made upon the hypothesis, that a given number of acres is contained within the boundary; and the injury results from the fact that the given boundaries do not contain the stipulated area, and not from the fact that the boundaries do not contain other and different lands. The land was bought upon the representation and supposition that the two half-sections contained 640 acres, and not that the boundaries were not so extended as to embrace lands outside on the east and west. It would be most unjust to require one purchasing very fertile lands to receive compensation by reference to poor and worthless adjacent lands; and it would be equally unjust to require the vendor to compensate the purchaser of very poor lands, for a deficiency in quantity, by paying the value of a number of contiguous acres of greater value. Yet such would be the result of an application of the rule adopted in this case. The true rule is, to allow the purchaser compensation for the deficiency, according to the average value of the lands sold at the time of the purchase. See Blessing v. Beatty, 1 Rob. Va. Rep. 287. Following the decisions of this court in analogous cases, the price paid must be regarded as evidence of the value.—Marshall v. Wood, 16 Ala. 812; Whiteside v. Jennings, 19 Ala. 790 ; Hogan v. Thorington, 8 Porter, 430; Gibbs v. Jemison, 12 ib. 820. Pinkston v. Hine, 9 Ala. 256; Willis v. Dudley, 10 Ala. 938; Kornegay v. White, 10 Ala. 255 ; Worthy, Brown & Co. v. Patterson, 20 Ala. 172; Rowland's Adm'r v. Shelton, 25 Ala. 220; Marshall v. Gantt, 15 Ala. 686.

We agree with the learned chancellor, that the ferry and river privileges ought to be considered in estimating the damages. Inasmuch as the purchaser obtained all in the way

of benefit from the ferry and river that was contemplated in the contract, he must be compensated for the deficiency in the quantity of the land by ascertaining the average value without reference to such benefit; or, in other words, the average value of the lands must be ascertained, upon the hypothesis of the absence of the ferry and river, and that average value must be multiplied by the number of acres in the deficiency. If the price agreed to be paid should be adopted as the evidence of value, a deduction of the value of the ferry and river privileges must be made from the aggregate sum agreed to be paid for the entire tract of land, and the remainder must be divided by six hundred and forty, the number of acres represented to be the contents ; and the average value thus ascertained must be multiplied by the number of acres in the deficiency. The amount thus ascertained will be the damages of the complainant.

We concur with the chancellor in the opinion, that the representation of Bozeman as to the location of the eastern boundary line was the mere expression of opinion as to a matter of judgment, and not of knowledge. The proof shows that Bozeman correctly pointed out the south-eastern corner of the land, and that the boundary line running thence north was unmarked. Passing along the direction of that line, he pointed to a log, over or near which he stated (we infer from the testimony, as a matter of judgment,) the line would run. If Bozeman was really mistaken in this opinion, and honestly expressed it, it constitutes no fraud, and is no misrepresentation available to the purchaser in this case. There is no proof which authorizes the conclusion, that Bozeman did not really believe the representation he made as to the location of the line to be true.

The court, having obtained jurisdiction over the case on account of the misrepresentation as to the quantity of the land, should have gone on and done complete justice by settling the entire litigation, without remitting the complainant to his defense at law as to the payments alleged to have been made on the notes. Having jurisdiction for one purpose, the court acquired jurisdiction over the question of the credits on the notes, and ought to have gone on and adjudicated that matter of litigation. If the question of fact had been of

damage, or fraud, or any other peculiarly fitted for the determination of a jury, it would have been proper to have left that question for trial at law ; but in this case, the question being one of account, it was proper for the chancellor to have gone on and done complete justice by deciding it.— 1 Story's Eq. Jur. 88, § 91 ; Cathcart v. Robinson, 5 Peters, 270 ; Miller v. McCan, 7 Paige's Ch. R. 460 ; Russell v. Clark's Ex'rs, 7 Cranch, 89; Chum v. Heale, 1 Munford, 72.

The mode of computing interest on the deductions made from the purchase money in favor of the complainant, which the chancellor adopted, was manifestly just and proper, and we approve it.

The decree of the court is reversed, and the cause remanded, for further proceedings in accordance with the foregoing opinion.

Rice, C. J., not sitting.